UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| Jeffrey J. Stepstrong Dontigney,  :  | |
|     Plaintiff, : | |
| : | |
| v. : | Case No. 3:04cv994 (PCD) |
| : | |
| Connecticut BIAC, et al., : | |
|     Defendants. : | |

**RULING ON DEFENDANTS' MOTIONS TO DISMISS**

Motions to Dismiss the Plaintiff's Complaint have been filed by Sandra Eichelberg [Doc. No. 94], Aurelius Piper [Doc. No. 101], Richard Heyward [Doc. No. 91], the U.S. Secretary of State [Doc. No. 89], and Connecticut Governor Jodi Rell, Connecticut Secretary of State Susan Bysiewicz, along with Connecticut Indian Affairs Council Coordinator Edward Sarabia [Doc. No. 97]. For the reasons stated herein, Defendants Motions are all **granted**. The claims against Defendant Richard Valkey are **dismissed**.

**I. BACKGROUND**

In his Complaint [Doc. No. 14], Plaintiff makes several allegations, some of which are difficult to comprehend.[1] It appears that Plaintiff had ancestors that were Connecticut Indians. (Genealogy Report, Unidentified Ex. to Pl.'s Compl.) Plaintiff has tried unsuccessfully to become a member of several of the Connecticut Tribes,[2] and he has filed three lawsuits including

---

[1] Plaintiff's Complaint is hand written and some of his claims are difficult to decipher.

[2] As the U.S. Attorney's brief explains, it is difficult to become a member of an Indian Tribe. Many if not most Tribes have very strict requirements. An applicant often has to be a direct descendant as opposed to having some Indian ancestors. These requirements have been further tightened with the introduction of Indian gaming. See generally Brendan Ludwick, The

many of the current Defendants.[3]

In this case, however, Plaintiff argues that he is not repeating his previous suits, but is making new claims against the Connecticut Indian Affairs Council[4] ("CTIAC") and the U.S. Bureau of Indian Affairs ("USBIA").

> "The main issue at heart here is that the petitioner can not regain his membership or entitled recognition in the CTBIAC because it has been illegally monopolized and ill managed by the State of Connecticut Secretary of State and Governor. The BIAC members and officials have illegally monopolize the state BIAC agency by employing the same ill managed tribal casino leaders to operate the separate state agency with only certain intent that benefit the 4 state tribes solely. The state and state BIAC and the tribes work together to cause conspiracies to fraud and deceive the general public - Washington, D.C., - the USBIA and not to smart real red skin people." (Pl.'s Compl. 5-6.)

Plaintiff seeks a writ of mandamus and a hearing to determine if he should be made a member of one Connecticut Indian Tribe and two government Indian agencies. Plaintiff also alleged that there was a conspiracy to prevent him from doing these things. Plaintiff named as Defendants the Connecticut Indian Affairs Council manager Ed Sarabia, the U.S. Secretary of State as director of the United States Bureau of Indian Affairs ("USBIA"), Connecticut Governor Jodi Rell, the Connecticut Secretary of State, Sandra Eichelberg as a representative of the Mohegan

---

Scope of Federal Authority Over Tribal Membership Disputes and the Problem of Disenrollment, The Fed. Lawyer, Oct. 2004, at 37-46.

[3]Plaintiff has filed three similar lawsuits and one appeal over this issue. See Dontigney v. Connecticut Bureau of Indian Affairs Council, No. CV030830534S, 2004 Conn. Super. LEXIS 1785 (June 30, 2004); Dontigney v. Connecticut Bureau of Indian Affairs Council, No. CV040831579S, 2004 Conn. Super. LEXIS 1785 (June 30, 2004); Dontigney v. Brown, No. 466939, 2002 Conn. Super. LEXIS 3297 (Oct. 8, 2002), *aff'd*, 82 Conn. App. 11, 842 A.2d 597 (2003).

[4]Plaintiff continually refers to the "Connecticut Bureau of Indian Affairs Council" which the Court assumes to be the "Connecticut Indian Affairs Council."

Tribe, Richard Hayward as a representative of the Mashantucket Pequot Tribe, Richard Velkey as a representative of the Schaghticoke Tribal Nation, and Aurelius Piper as a representative of the Golden Hill Paugusset Tribe.  When Defendants argued in their Motions that Plaintiff was just trying once again to be made a member of a Connecticut Tribe through litigation, Plaintiff responded with the same argument about the CTIAC and USBIA.

> "The defendants think that the main issue is that the tribes will not allow membership for the petitioner.  This is not the issue but rather the issue is that the Defendants in Chief the CTBIAC will not allow the petitioner to become a member of the CTBIAC which in turn denies the petitioner to be a member of the USBIAC.  This is a illegal monopoly starting from the denial of a red skin to be in a tribe."  (Pl.'s Resp. to Mot. to Dismiss J. 2 [Doc. No. 100].)

Plaintiff argues that he should be a member of the CTIAC and the USBIA, but that he was "illegally thrown out and dismembered."[5]  Plaintiff insists on his right to be a member of these organizations.  It is not clear if by "member" Plaintiff seeks to be an *actual* member of the seven-member CTIAC[6] or rather a "member of the Indian groups which benefit from the CTIAC."  It appears from the remainder of the Complaint that Plaintiff wants to receive the benefits of being recognized by the CTIAC, and the Court construes Plaintiff's Complaint as seeking such relief.

## II.  STANDARD OF REVIEW

Defendants move to dismiss Plaintiff's Complaint on the grounds that the Court lacks jurisdiction due to sovereign immunity and that Plaintiff fails to state a claim on which relief can be granted.  In deciding a motion to dismiss under Rule 12(b)(1) or 12(b)(6), the issue is not

---

[5] The Court construes Plaintiff's claim that he was "dismembered" as a claim that he was "disenrolled from membership."

[6] The CTIAC is made up of three members appointed by the governor and four members from the Connecticut Tribes.  Conn. Gen. Stat. § 47-59(b) (2003).

3

whether a Plaintiff will ultimately prevail, but whether the Plaintiff is entitled to offer evidence to support the claims. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1973). A court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.1994) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)); see also Kaluczky v. City of White Plains, 57 F.3d 202, 206 (2d Cir. 1995). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. See, e.g., Albert v. Carovano, 851 F.2d 561, 572 (2d Cir.1988); Clapp v. Greene, 743 F. Supp. 273, 276 (S.D.N.Y. 1990). Complaints prepared by pro se plaintiffs should be construed liberally and held to "less stringent standards than formal pleadings drafted by lawyers." Scott v. Gardner, 287 F. Supp. 2d 477, 483 (S.D.N.Y. 2003). Pro se complaints should thus be interpreted to raise the strongest arguments that they suggest. Knight v. Keane, 247 F. Supp. 2d 379, 383 (S.D.N.Y. 2002).

      When a party moves to dismiss pursuant to Rule 12(b)(1) in addition to other grounds, such as Rule 12(b)(6), "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." Rhulen Agency, Inc. v. Alabama Ins. Guaranty Ass'n, 896 F.2d 674, 678 (2d Cir. 1990). A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case. In contrast, a dismissal under Rule 12(b)(6) is a

dismissal on the merits of the action--a determination that the facts alleged in the complaint fail to state a claim upon which relief can be granted. Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187-88 (2d Cir. 1996).

### III. DISCUSSION

Pursuant to Rhulen, the Court's subject-matter jurisdiction over Defendants will first be analyzed. If the Court has jurisdiction over any Defendants, the Complaint will be analyzed to see if Plaintiff states a claim against these Defendants.

**A. THIS COURT'S SUBJECT-MATTER JURISDICTION**

Defendants argue that they are protected by sovereign immunity. More specifically, the state Defendants claim state sovereign immunity under the Eleventh Amendment, the federal Defendant claims federal sovereign immunity, and the tribal defendants claim tribal sovereign immunity.[7] These claims are discussed individually below.

**1. Federal Sovereign Immunity**

Sovereign immunity applies to the federal government, United States v. Sherwood, 312 U.S. 584, 586, 61 S. Ct. 767, 770-71 (1941), and must be clearly waived by Congress before suit can be brought. Plaintiff has the burden of establishing that sovereign immunity has been waived. See Up State Fed. Credit Union v. Walker, 198 F.3d 372, 375 n.4 (2d Cir. 1999); Cole v. United States, 657 F.2d 107, 109 (7th Cir. 1981). Therefore, the United States Secretary of the Interior, as the director of the USBIA, is immune from suit unless Plaintiff establishes otherwise.

---

[7]Aurelius Piper, the representative of the Golden Hill Paugusset Tribe, filed a short Motion to Dismiss that agreed with all the arguments made by the Connecticut state defendants. Defendant Piper can not claim *State* sovereign immunity, which is inapplicable to him.

**2. Tribal Sovereign Immunity**

Federally recognized Indian Tribes are immune from suit unless Congress or the Tribe has specifically waived that immunity. See Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 754, 118 S. Ct. 1700, 1702 (1998); Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58-59, 98 S. Ct. 1670, 1677 (1978). Richard Hayward and Sandra Eichelberg are representatives and members of federally recognized tribes.[8] See 25 U.S.C. § 1758 (2004) (recognizing the Mashantucket Pequot Tribe); 25 U.S.C. 1775 (2004) (recognizing the Mohegan Tribe). Therefore, these Defendants have correctly asserted their right to sovereign immunity, and Plaintiff must point to a statute or Tribal agreement waiving this immunity for the Court to maintain subject-matter jurisdiction over them.

**3. State Sovereign Immunity**

The state sovereign immunity claims require more analysis. Plaintiff has named three Connecticut executive officers - the Governor, Secretary of State, and the manager of the CTIAC - as Defendants. Plaintiff alleges in his Complaint that these three officers have abused their state power; in other words, Plaintiff argues that these Defendants were acting under color of state law as Connecticut officials and not as private citizens.[9] If the state executive actors have violated federal law, then they have exceeded their authority as state agents and lose immunity.

---

[8] Plaintiff has named several of the Defendants "in their individual and official" capacities. Unless Plaintiff asserts that these Defendants acted outside of their authority, the Plaintiff can not avoid sovereign immunity just by naming the individual. See Bassett v. Mashantucket Pequot Museum & Research Center, 221 F. Supp. 2d 271, 277-78, 280 (D. Conn. 2002).

[9] Since the Connecticut officials must be acting under color of state law in order to claim sovereign immunity, they accept Plaintiff's assertion.

See Ex Parte Young, 209 U.S. 123, 152-54, 28 S. Ct. 441, 451 (1908). As Justice White has pointed out, this results in temporarily putting the cart before the horse because the court must decide if Plaintiff correctly alleges a violation to determine whether Defendants have waived immunity. See Florida Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 717, 102 S. Ct. 3304, 3331 (1981) (White, J., dissent). Peeking ahead to Plaintiff's claims - which are also discussed later in Section IV of the opinion - Plaintiff fails to show that the state officers have violated any federal law. Plaintiff merely lists several statutes at the beginning of his Complaint but then offers no *acts* which are actually performed *by the three state officers named* other than repeating the titles of the statutes. (See Pl.'s Compl. 10-11 ("All parties are in violation of 42 U.S.C. §§ 1985, 1986 (civil rights conspiracy) because defendants conspire to obstruct the due course of justice....")). Therefore, since the Plaintiff does not claim that any of the state officers have exceeded their immunity by violating federal law, his suit is actually against the state and he must directly show that sovereign immunity has been waived.

### 4. Waiver of Sovereign Immunity

As discussed, Plaintiff has the duty of pointing to a statute or pronouncement in which the Defendants have waived their sovereign immunity. Plaintiff's Complaint relies on a variety of statutes in support of this claim. (Pl.'s Compl. 2.) The Court's review of these statutes, however, reveals that none of the statutory provisions relied upon establish a waiver in this case.

#### a. 28 U.S.C. § 1361

The federal mandamus statute is an assertion of jurisdiction, but it has been repeatedly held that it does not increase the subject-matter jurisdiction of the federal courts. See J.C. Penny Co. v. United States Dep't of Treas., 319 F. Supp. 1023, 1030 (S.D.N.Y. 1970), *aff'd*, 439 F.2d

63 (2d Cir. 1971), *cert. denied*, 404 U.S. 869. This statute must therefore be used in combination with another grant of jurisdiction in order to apply.

### b. 28 U.S.C. § 1362

This statute allows federally recognized Indian Tribes to bring suits in federal court, but since the Plaintiff is not a member of a federally recognized Indian Tribe, this statute is unavailable to Plaintiff.

### c. 42 U.S.C. § 1981

This statute establishes the right of all citizens to equal treatment under the law. This statute is not considered to be a waiver of state or federal sovereign immunity. See Freeman v. Michigan Dep't of State, 808 F.2d 1174, 1179 (6th Cir. 1987); Penn v. Schlesinger, 490 F.2d 700, 703 (5th Cir. 1973), *rev'd on other grounds after rehearing*, 497 F.2d 970 (1974). Therefore, Plaintiff can not use this statute to avoid sovereign immunity.

### d. 42 U.S.C. § 1983

This statute allows civil actions for the deprivation of rights. As mentioned above, Plaintiff has not argued that any of the Defendants have exceeded their official capacity, so this statute is unavailable as a waiver of sovereign immunity. See Quern v. Jordan, 440 U.S. 332, 99 S. Ct. 1139 (1979); Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schultz, 137 F. Supp. 2d 83 (N.D.N.Y. 2001), *aff'd*, 290 F.3d 476.

### e. 42 U.S.C. §§ 1985, 1986

These statutes grant a right of action against "people" (not states) who conspire to interfere with civil rights and against "people" who neglect to prevent § 1985 violations. See Toscano v. Olesen, 189 F. Supp 118 (S.D. Cal. 1960). Since the statutes grant only action

against "people," Plaintiff can not use them as a waiver of sovereign immunity.

### f. 42 U.S.C. § 1997

This statute waives sovereign immunity for suits brought by the Attorney General on behalf of institutionalized persons. Since the Plaintiff is not the Attorney General, he can not use this statute. There is no showing that Plaintiff exhausted or even began to exhaust his "administrative remedies," a prerequisite to utilizing this statute. Therefore, Plaintiff can not use this statute to avoid sovereign immunity.

### g. Conn. Gen. Stat. 52-485

Like the federal statute, to use this Connecticut mandamus statute the Plaintiff must show that there is a duty not being performed. See State ex rel. Mandigan v. County Com'rs of County of Fairfield, 6 Conn. Supp. 142 (1938). Plaintiff has not asserted that there is a legal duty not being performed that allows him to avoid sovereign immunity with this statute.

### h. Conn. Gen. Stat. 47-59(b)

This statute created the CTIAC and defines the method of appointing members. It provides no legal rights to Plaintiff and is not a waiver of sovereign immunity.

### I. Conn. Gen. Stat. 47-66(j)

This statute provides that a rejected applicant to a Connecticut Tribe may appeal the Tribe's decision to a "Council" and then to Connecticut Superior Court. This statute, however, does not give this *federal* court jurisdiction over such appeals. Any waiver of sovereign immunity contained in this statute is specifically limited to Connecticut state courts, and Plaintiff can not use such a waiver in this Court.

### 5. Conclusion on Sovereign Immunity

The Court concludes that Plaintiff has not shown that state, federal, or tribal sovereign immunity should be waived. This Court therefore lacks subject-matter jurisdiction over CTIAC manager Ed Sarabia, Governor Jodi Rell, Connecticut Secretary of State, the U.S. Secretary of the Interior, Sandra Eichelberg, and Richard Hayward.[10]

## B. PLAINTIFF'S FAILURE TO STATE A CLAIM

Although Richard Valkey did not file a motion to dismiss, Aurelius Piper filed a motion to dismiss asserting that Plaintiff failed to state a claim. The Court will consider Plaintiff's failure to state a claim for both Aurelius Piper and Richard Valkey.[11] Assuming, arguendo, that the Court maintained subject-matter jurisdiction over the other Defendants, Plaintiff's claims would still fail to state a claim for which relief can be granted.[12]

### 1. Plaintiff's Claim Against the Tribes

---

[10] Aurelius Piper and Richard Valkey have not made claims as to their own sovereign immunity, and their respective Tribes do not appear to be federally recognized. Accordingly, the Court will consider whether Plaintiff stated a claim for which relief can be granted against these two Defendants.

[11] A District judge may dismiss a Complaint for failure to state a claim on his or her own initiative as long as the procedure employed is fair to the parties. Charles Wright & Arthur Miller, Federal Practice and Procedure § 1357 (3d ed. 2004). Dismissing the final Defendant here is fair. Seven of the eight Defendants filed Motions to Dismiss for failure to state a claim. Plaintiff responded to these motions. It should come as no surprise that Valkey, the eighth Defendant, would have a similar argument, especially since Plaintiff has no specific claim against him. Therefore, if the eighth Defendant would have been dismissed if he made the same argument that *was* made by one of the other seven Defendants, the claim against that Defendant will be dismissed as well.

[12] While distinguishing between a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) and a dismissal for failure to state a claim under Rule 12(b)(6) appears straightforward in theory, in most circumstances it makes little practical difference whether the court labels its dismissal of an action as one for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6). Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1188 (2d Cir. 1996).

Plaintiff has named the Tribes as Defendants, and it appears that Plaintiff seeks to be made a Tribe member so that he can then be a member of the CTIAC and the USBIA, although Plaintiff would forgo this step if he could be a member of the CTIAC and USBIA. It is well settled that this Court does not have the power to make the Plaintiff a member of any Indian Tribe. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 72 n.32, 98 S. Ct. 1670, 1684 n.32 (1978). This issue has been sufficiently discussed in Plaintiff's previous lawsuits, and in this suit Plaintiff appears to accept that the courts will not force a sovereign nation to accept him as a citizen. Instead, he devotes most of his argument towards the CTIAC and USBIA.

Connecticut has an appeals process for applicants who have been denied membership in Indian tribes. See Conn. Gen. Stat. § 47-66(j). The process involves an appeal to a "Council" whose decision can then be appealed to the Connecticut Superior Court. Plaintiff does not allege that he appealed to the Council. Therefore, this Court has no basis to interfere in the membership decisions of a sovereign Indian Tribe.

### 2. Plaintiff's Claim Against the CTIAC

Plaintiff claims that as an Indian he is entitled to the benefits of the CTIAC. The CTIAC is designed to provide services to the Indian community. See Conn. Gen. Stat. § 47-59(b). As Plaintiff argues:

> "[T]he BIA claims that [Dontigney] can not be reinstated in the CTBIAC because the Mohegan Casino Tribe or any other federal recognized tribe in CT will not reinstate or grant membership of there tribe. The CTBIAC claims that one must be a member and belong to a federally recognized tribe in order to grant membership in the CTBIAC. That is not a requirement and never was." (Pl.'s Compl. 6.)

Plaintiff is partially mistaken. Although Plaintiff does not have to be a member of a federally recognized tribe to receive CTIAC benefits, Connecticut law provides that one must be an

"Indian" to receive those benefits. See Conn. Gen. Stat. § 46-59(b) (2001) (limiting benefits to the Indian community). State law defines "Indian" as one who is a member of one of four Connecticut Tribes. Conn. Gen. Stat. § 46-63 (2001). Since Plaintiff has not shown that he is a member of one of the four Tribes, he is not entitled to CTIAC benefits. Plaintiff considers himself to be an Indian and thus entitled to benefits. As he falls outside the legal definition of "Indian", he is not entitled.

### 3. Plaintiff's Claim Against the USBIA

The USBIA offers specific programs that benefit Indians and Indian Tribes. Each USBIA program has different qualifications. Plaintiff's failure to claim under any specific program precludes finding that he has been denied the benefit of any program to which he is entitled. However, almost all programs are limited to members of federally recognized Indian Tribes. See 25 U.S.C. § 2021 (2004) (limiting the education program to federally-recognized Indian Tribes). Only if Plaintiff identified a specific program which pertained to him would he be entitled to its benefits. As he has not done so and does not meet the requirement that recipients be members of federally recognized Tribes, he is not so entitled.

### 4. Plaintiff's Conspiracy Claim

Plaintiff claims that:

> "[He] cannot regain his membership or entitled recognition in the CTBIAC because it has been illegally monopolized and ill managed by the state of Connecticut Secretary of State and Governor." (Pl.'s Compl. 5.)

> "The state and state BIAC and the tribes work together to cause conspiracies to fraud and deceive the general public and not to smart redskin people. They work to keep people like this petitioner from being a member of the tribe - casino - CT state BIA then the USBIA maybe the US Government is also part of the conspiracy and errors." (Pl.'s Compl. 6.)

> "[Plaintiff was denied the right to create his own recognized Tribe] because petitioner was not the direct "son" of a great chief.  There is a real clear sign that there is an illegal monopolization and deterrent to offer ME the petitioner and other real native indigenous red skins there rights - privileges - benefits and entitlements starting at the state and tribal level because how the tribes work directly with the monopolization corruption and conspiracies...." (Pl.'s Compl. 7.)

> "Here it can be said that all the parties are in violation of 42 U.S.C. §§ 1985, 1986 Civil Rights Conspiracy because defendants conspire to obstruct the due course of justice in state courts with intent to deny the petitioner equal protection of the [laws]...." (Pl.'s Compl. 10-11.)

Plaintiff must do more than conclusionally use the word "conspiracy".  Plaintiff fails to allege what actions were taken by the Connecticut state officials or the tribe members that allegedly conspired against him.  Cf. Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000) (stating that "bald assertions" and "conclusions of law" are not sufficient to create a claim). Plaintiff does not allege a meeting of the minds, any specific acts performed in furtherance of the conspiracy, or even that the "conspirators" have ever communicated with each other.  Plaintiff has claimed that the tribes and Connecticut officials are conspiring to deny him the benefits of programs to which he is not entitled.  Plaintiff's assertion of a "conspiracy to follow the law" fails to state a claim for which relief may be granted.

### 5. Conclusion on Plaintiff's Claims

For the foregoing reasons, even if this Court had jurisdiction, none of Plaintiff's claims are actionable.  The Court has taken notice of Plaintiff's pro se status, but Plaintiff fails to allege any *legal* wrongs that he has suffered.  He was not made a member of an Indian Tribe - a decision that must be made by the Tribe and not this Court - and then he was not given government benefits which are available only to Tribe members.  The claims against the remaining Defendants, including Richard Valkey, are dismissed.  The claims against the other

13

Defendants would also have been dismissed, had they survived the 12(b)(1) hurdle.

## C. CLAIM PRECLUSION

Because all claims against Defendants have been dismissed, there is no need to reach Defendants' arguments about claim preclusion.

## IV.  CONCLUSION

Plaintiff's devotion to his Indian heritage does not overcome his lack of acceptance by the Indian Tribes in Connecticut.  This Court is not authorized to make Plaintiff an "official" Indian Tribe member.  The Plaintiff complains that, without Tribe membership, he cannot as an Indian receive benefits from the CTIAC and the USBIA.  This may be a "catastrophic domino effect," but the CTIAC and USBIA limits on their programs are legislatively set.  Plaintiff's identification of himself as an Indian and his pride in that cannot be changed by any Court, Government, or Agency.

For the foregoing reasons, Defendants' Motions for Summary Judgment are GRANTED.  The claims against Richard Valkey are also DISMISSED.  The Clerk shall close the file.

SO ORDERED.

Dated at New Haven, Connecticut, August  10th , 2006.

/s/
Peter C. Dorsey, U.S. District Judge
District of Connecticut